UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

JOSE NILA CASTRO,

        Petitioner,                      Case No. 1:26-cv-161

v.                                            Honorable Hala Y. Jarbou

KEVIN RAYCRAFT et al.,

        Respondents.
_____/

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I.    Procedural History

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 either ordering Respondents to release Petitioner or ordering Respondents to conduct a bond hearing to satisfy the requirements of due process. (Pet., ECF No. 1, PageID.25.)

In an order entered on January 21, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner

should not be granted. (Order, ECF No. 3.) Respondents filed their response on January 26, 2026, (ECF No. 4), and Petitioner filed his reply on January 28, 2026, (ECF No. 5).

## II.    Factual Background

Petitioner is a native and citizen of Mexico. (Pet., ECF No. 1, PageID.5; Notice to Appear (NTA), ECF No. 4-1, PageID.80.) He entered the United States without inspection 24 years ago as a three-year-old child. (Pet., ECF No. 1, PageID.11; NTA, ECF No. 4-1, PageID.80.) Petitioner was granted relief under the Deferred Action for Childhood Arrivals (DACA) by the United States Citizenship and Immigration Services (USCIS) for the past several years. (Pet., ECF No. 1, PageID.11.) His most recent grant of DACA relief is valid until June 24, 2026. (*Id.*) USCIS has not provided Petitioner with a notice of intent to terminate Petitioner's DACA status and Petitioner has not been provided with any other information that would suggest that his DACA relief has been revoked. (*Id.*)[1]

On January 3, 2026, ICE agents encountered and arrested Petitioner. (*Id.*) The Department of Homeland Security issued Petitioner a Form I-862, NTA, charging Petitioner with inadmissibility under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA) because Petitioner is an immigrant "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (*Id.*; NTA, ECF No. 4-1, PageID.80.)

## III.   Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S.

---

[1] Respondents do not contend that Petitioner's grant of DACA relief was invalid at the time of Petitioner's January 3, 2026, arrest. Indeed, Respondents do not mention DACA in their response.

Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.   Exhaustion

Respondents argue that the Court should deny Petitioner's request for habeas corpus relief because Petitioner has not exhausted his administrative remedies. Specifically, Respondents argue that Petitioner should pursue a bond hearing and, if necessary, appeal any unfavorable decision to the Board of Immigration Appeals.

The Court declines to enforce the doctrine of prudential exhaustion against Petitioner, and even if the Court were to conclude that exhaustion is warranted, the Court concludes in the alternative that waiver of exhaustion is appropriate, for the reasons set forth in the Court's exhaustion analysis in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *2–3 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *2–4 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *2–4 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *2–3 (W.D. Mich. Dec. 12, 2025).

Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

## V.     Merits Discussion

Petitioner alleges that, at the time of his arrest, he held valid DACA status. (Pet., ECF No. 1, PageID.1.) He claims that his detention therefore violates his Fifth Amendment due process rights.[2]

> In 2012, the Department of Homeland Security ("DHS") first announced DACA as a policy to allow certain noncitizens who arrived in the U.S. as children to apply for forbearance from removal. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 8–9 (2020). Those granted DACA status became eligible for work authorization and federal benefits. *Id.* at 9.

*Intriago-Sedgwick v. Noem*, No. 1:25-CV-01065-MIS-LF, 2025 WL 3688155, at *4 (D.N.M. Dec. 19, 2025). As the Supreme Court has explained, DACA is a "program for conferring affirmative immigration relief" for certain individuals who arrived in the United States as a child, including the ability to work and eligibility for Social Security benefits. *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 18 (2020). Under the applicable regulations, DACA recipients are treated as "lawfully present" in the United States for the period of the deferred action. 8 C.F.R. § 236.21(c)(3). As the Supreme Court has explained, "[a]pproval of deferred action status means" that for "humanitarian reasons," no action will be taken to remove the recipient from the

---

[2] Petitioner also contends that Respondents have violated the INA by concluding that Petitioner is detained pursuant to the mandatory detention provisions set forth in 8 U.S.C. § 1225(b)(2). Respondents, however, contend that Petitioner meets every element for detention under § 1225(b)(2), and that the statute's structure and history support Respondents' interpretation.

The Court concludes that § 1226(a), not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States and were already within the United States when apprehended and arrested for the reasons set forth in the Court's statutory analysis in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *3–6 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *4–6 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *4–7 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *3–6 (W.D. Mich. Dec. 12, 2025); *Escobar-Ruiz v. Raycraft,* No. 1:25-cv-1232, 2025 WL 3039255, at *4 (W.D. Mich. Oct. 31, 2025) (DACA recipient "cannot logically be said to be seeking admission" within the meaning of 8 U.S.C. § 1225(b)(2)).

United States, even though he or she is otherwise removable. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999). Thus, "[a] core benefit of DACA is that it allows recipients to live, study, and work in the United States without fear of arrest or deportation." *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *10 (W.D. Tex. Oct. 2, 2025).

DACA status is not guaranteed to all noncitizens who were brought to the United States as minor children but instead follows a strict vetting process. USCIS may, in its sole discretion, grant DACA status to a noncitizen who shows that he or she (1) first resided in the United States before his or her sixteenth birthday, (2) continuously resided in the United States from June 15, 2007, to the time of the filing of the request but for an otherwise "brief, casual, and innocent" absence, (3) was physically present in the United States both on June 15, 2012, and at the time of filing of the request, (4) satisfies the "educational or veteran status" requirements, (5) does not have a disqualifying criminal, public safety or national security concern, and (6) is at least fifteen years old at the time of the request. 8 C.F.R. § 236.22(b). And even then, DACA status is not permanent but is subject to renewal every two years. *Id.* § 236.23(a)(4).

This does not mean that the Department of Homeland Security (DHS) is precluded from commencing removal proceedings or initiating criminal or other enforcement against a DACA recipient. *Id.* § 236.21(c)(1). However, even under the agency regulations, if DHS chooses to terminate a recipient's DACA status before expiration, USCIS must follow certain procedures. *Id.* § 236.23(d). Specifically, USCIS must provide the noncitizen with "a Notice of Intent to Terminate and an opportunity to respond prior to terminating a grant of [DACA]." *Id.* § 236.23(d)(1).[3]

---

[3] USCIS may terminate DACA status without a Notice of Intent and opportunity to respond if the noncitizen is convicted of a national security-related offense or egregious public safety offense. 28 C.F.R. § 236.23(d)(1). However, the Court has not been provided with any information that would suggest that Petitioner has been convicted of any such offense.

5

> USCIS's own guidance instructs officers that the "termination of a DACA grant must comply with the Administrative Procedure Act (APA)," and that "USCIS must comply with DACA regulations" that "require notice and an opportunity to respond before an alien's DACA grant is terminated." U.S. Citizenship & Immigr. Servs., Policy Memorandum, 2025 WL 2779169, at *2 (Sept. 26, 2025). The guidance notes that "[c]ompliance with regulations, by issuing a NOIT and consistently applying the standards for DACA terminations, bolsters the government's position that it is not abusing its discretion or acting in an arbitrary or capricious manner." *Id.*

*Intriago-Sedgwick*, 2025 WL 3688155, at *5. Thus, while the government may be free to terminate DACA relief, the Sixth Circuit has explained that, where it has not done so, a DACA recipient's "arrest and detention despite that relief were unauthorized." *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863 (6th Cir. 2022) (vacating the district court's dismissal of a DACA recipient's *Bivens* action for lack of subject matter jurisdiction and remanding claims, including a Fifth Amendment due process claim, for further proceedings).

Accordingly, in assessing Petitioner's Fifth Amendment due process claim, the Court will turn to the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See, e.g.*, *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852–56 (6th Cir. 2020) ("If this court has previously addressed the due-process claim, then we are bound by precedent; if the claim is an issue of first impression, then we generally apply the three-factor test the Supreme Court set out in *Mathews v. Eldridge*."). Under *Mathews*, the Court must consider the following three factors: "(1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335).

The first *Mathews* factor clearly weighs in favor of Petitioner. There is no dispute that Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)

(citation omitted); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects.") Petitioner's interest in remaining free of detention while protected by DACA is bolstered by decisions holding that a DACA recipient is entitled to due process before their DACA status is terminated, *Santiago*, 2025 WL 2792588, at *10, and by DHS's own regulations requiring "a Notice of Intent to Terminate and an opportunity to respond prior to terminating a grant of [DACA]" and allowing for removal, 8 C.F.R. § 236.23(d)(1).

The Court may also consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). There can be no doubt that he is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *See Günaydin*, 784 F. Supp. 3d at 1187.

The second *Mathews* factor also weighs in Petitioner's favor. Respondents contend that Petitioner is not entitled to further process because Petitioner received notice of the charges against him, has access to counsel, may attend hearings with an immigration judge, can request bond at that time, has the right to appeal the denial of any request for bond, and has been detained by ICE for less than a month. However, Respondents have also taken the position that Petitioner is subject to mandatory detention provisions set forth in 8 U.S.C. § 1225(b)(2), something this Court has repeatedly rejected as an erroneous deprivation of noncitizens' due process rights. *See, e.g., Antele Cobix*, 2025 WL 3562651, at *3–6; *Candela Bastidas*, 2025 WL 3562638, at *4–); *Acuna*

*Sanchez*, 2025 WL 3562577, at *4–7; *Penagos Robles*, No. 1:25-cv-1578, 2025 WL 3558128, at *3–6.

In considering the degree to which alternative procedures could ameliorate the risk of error, the procedures already in place for strict vetting of DACA recipients every two years, 8 C.F.R. §§ 236.21(c)(3), 236.23(a)(4), ensure individualized review and a meaningful assessment of whether an applicant is dangerous or a flight risk. Should Respondents wish to terminate a recipient's DACA status before expiration, 8 C.F.R. § 236.23(d) allows Respondents to do so with notice and an opportunity to be heard, further decreasing the risk of an erroneous deprivation of liberty.

Finally, under the third *Mathews* factor, the Court recognizes that the Government has an interest in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community. *See Zadvydas*, 533 U.S. at 690-91. However, that interest "is weak or nonexistent where removal seems a remote possibility at best." *Id.* at 690.

Here, removal is not even a "remote possibility." Petitioner holds valid DACA status until June 24, 2026. No action may be taken to remove Petitioner while he is protected by DACA. *See Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 484. Therefore, unless Petitioner's DACA status expires or is otherwise properly terminated, his detention serves no valid purpose. *See Sepulveda Ayala v. Bondi*, 25-cv-1063, 2025 WL 2209708, at *4 (W.D. Wash. Aug. 4, 2025) (concluding government had no legal basis to detain petitioner where deferred action prevented his removal). Moreover, Respondents have shown no interest in detaining an individual who, through DACA's strict vetting process, has repeatedly shown he is not a danger to the community,

In sum, the Court's balancing of the *Mathews* factors weighs in Petitioner's favor. Therefore, this Court joins "[c]ourts across the country" in concluding that DACA recipients such

8

as Petitioner are entitled to relief from detention pursuant to § 2241. *Intriago-Sedgwick*, 2025 WL 3688155, at *5 (collecting cases); *see also, e.g., Santiago*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *14 (holding that immediate release is the appropriate remedy because the only interest that the government has in detaining Santiago is to seek a removal order against her which "is inexecutable because Santiago is protected by DACA"); *Sepulveda Ayala*, 2025 WL 2209708, at *4 (concluding that, because there is no legal basis to detain Ayala, a DACA recipient, for removal, habeas relief is appropriate); *F.R.P. v. Wamsley*, 2025 WL 3037858, at *3, *8 (D. Or. Oct. 30, 2025) (ordering a DACA recipient's immediate release after reasoning that "[l]egal precedent strongly suggests that" the government does not "have free reign to detain a deferred action recipient without a pre-detention hearing or individualized determination").

## VI. Other Claims and Other Forms of Relief

Because the Court will conditionally grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## VII. Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of all of the other named Respondents. The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's orders regarding a hearing or release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan, the Court will retain the ICE Detroit Field Office Director and the Secretary for the Department of Homeland Security as Respondents. The Court will dismiss the United States Department of Homeland Security as a Respondent.

## Conclusion

For the reasons discussed above, the Court will enter a judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to immediately release Petitioner from custody. Additionally, the Court will enjoin Respondents from re-detaining Petitioner absent a material change in circumstances unless the requirements of due process have been satisfied. The Court will also order Respondents to file a status report within two days of the issuance of the Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. Further, the Court will dismiss the United States Department of Homeland Security as a Respondent.

Dated: February 11, 2026         /s/ Hala Y. Jarbou
                                 HALA Y. JARBOU
                                 CHIEF UNITED STATES DISTRICT JUDGE